**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

DONNA HATTER,

                Plaintiff,

vs.                                                Case No. 3:05-cv-982-J-MMH

JO ANNE B. BARNHART,
Commissioner of Social Security,

                Defendant.
_____/

**OPINION AND ORDER**[1]

This cause is before the Court on Plaintiff's Complaint for Judicial Review of a Final Decision of the Commissioner of the Social Security Administration (Dkt. No. 1; Complaint), seeking review of the final decision of the Commissioner of Social Security (Commissioner) denying her application for Disability Insurance Benefits (DIB) under the Social Security Act. Administrative remedies have been exhausted, and the case is properly before the Court.[2]

**I.    Background**

At the time of the administrative hearing, Plaintiff was 51 years old and living at home

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Order of Reference (Dkt. No. 16).

[2] Plaintiff requested oral argument on the issues raised in her Memorandum. See Plaintiff's Memorandum of Law in Opposition to the Commissioner's Decision Denying Plaintiff Disability Insurance Benefits (Dkt. No. 17) at 1. The Commissioner opposes this request. See Memorandum in Support of the Commissioner's Decision (Dkt. No. 18) at 1. Upon due consideration, the Court finds that oral argument is unnecessary to resolve the issues raised in this appeal, and accordingly, Plaintiff's request is **denied**. See Local Rule 3.01(d), United States District Court, Middle District of Florida (Local Rule(s)).

with her husband. See Tr.³ at 250-51.  She had completed high school and two years of college level courses.  See id. at 251.  Plaintiff previously worked in retail sales as a manager, a clerk, a cashier, and a make-up artist.  See id. at 252-55.  She now complains that her hypertension, asthma, bronchitis, migraine headaches, arthritis in her right hand and wrist, nerve damage in her right ankle and foot, post traumatic stress disorder, chronic diarrhea, right shoulder pain, left knee implant, and three fused cervical vertebrae limit her ability to work because she is "in constant, relentless pain." Id. at 100.

Plaintiff filed her application for DIB on December 18, 2001, alleging an onset date of January 25, 2001.  See id. 61, 100.  The application was denied initially and on reconsideration.  See id. at 25-26.  Thereafter, Administrative Law Judge JoAnn Anderson (ALJ) conducted a hearing on March 16, 2004.  See id. at 35, 239.  Plaintiff, who was represented by counsel, and Donna Mancini, a vocational expert (VE), testified at the hearing. See id. at 239.  On May 22, 2004, the ALJ denied Plaintiff's DIB application, finding that she was not disabled because she "could return to her past relevant work as [a] sales service supervisor as that job is performed in the national economy." Id. at 23.  The Appeals Council (AC) denied Plaintiff's request for review on July 27, 2005.  See id. at 4.  Plaintiff timely filed the Complaint on September 26, 2005.  See Complaint at 1.  Consequently, the Commissioner's decision is now final and ripe for review.  See Sims v. Apfel, 530 U.S. 103, 106-07 (2000).

## II.     Standard of Review

"Disability" is defined in the Social Security Act as the "inability to engage in any

---

³ The Transcript of Administrative Proceedings (Dkt. No. 13; Tr.) was filed on January 23, 2006.

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In evaluating whether a claimant is disabled, the ALJ must follow the sequential inquiry described in the regulations.[4] See 20 C.F.R. § 404.1520(a). While the claimant generally bears the burden to prove that he or she is disabled, see id. § 404.1512(a), the burden shifts to the Commissioner at step five to show that the claimant can perform other work in the national economy. See Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995) (per curiam).

The Commissioner's final decision may be reviewed by a district court pursuant to 42 U.S.C. § 405(g). It is well established, however, that review is limited to "whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam); see also Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam); Ellison v. Barnhart, 355 F.3d 1272, 1275 (11th Cir. 2003) (per curiam). The Commissioner's factual findings must be affirmed if they are supported by substantial evidence, "even if the

---

[4] The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability. The steps are as follows:
Step 1. Is the claimant engaged in substantial gainful activity? If the claimant is engaged in such activity, then he or she is not disabled. If not, then the ALJ must move on to the next question.
Step 2. Does the claimant suffer from a severe impairment? If not, then the claimant is not disabled. If there is a severe impairment, the ALJ moves on to step three.
Step 3. Does the claimant's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. If not, the next question must be resolved.
Step 4. Can the claimant perform his or her former work? If the claimant can perform his or her past relevant work, he or she is not disabled. If not, the ALJ must answer the last question.
Step 5. Can he or she engage in other work of the sort found in the national economy? If so, then the claimant is not disabled. If the claimant cannot engage in other work, then he or she is disabled.
See 20 C.F.R. §§ 404.1520(a) - (f) (2005); see also Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam); Phillips v. Barnhart, 357 F.3d 1232, 1237-40 (11th Cir. 2004); Foote v. Chater, 67 F.3d 1553, 1557 (11th Cir. 1995) (per curiam).

reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision." Johnson v. Barnhart, 268 F. Supp. 2d 1317, 1321 (M.D. Fla. 2002), aff'd, No. 02-16464, 2003 WL 21283493 (11th Cir. May 22, 2003) (unpublished table decision); see also Dyer, 395 F.3d at 1210; Shinn ex rel. Shinn v. Comm'r of Soc. Sec., 391 F.3d 1276, 1282 (11th Cir. 2004); Ellison, 355 F.3d at 1275; cf. Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998) ("An ALJ's decision will be reversed only if the decision is not supported by substantial evidence."). A reviewing court should not reweigh the evidence or substitute its judgment for that of the Commissioner. See Dyer, 395 F.3d at 1210; Foote, 67 F.3d at 1560.

Substantial evidence has been defined as "'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (quoting Falge, 150 F.3d at 1322); see also Ellison, 355 F.3d at 1275; Foote, 67 F.3d at 1560. It is more than a scintilla but less than a preponderance of evidence. See Dyer, 395 F.3d at 1210; Ellison, 355 F.3d at 1275. In determining whether substantial evidence supports a finding, portions of the transcript may not be viewed in isolation, but rather must be examined as part of the record as a whole. See Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Foote, 67 F.3d at 1560.

On the other hand, no deference is accorded to the Commissioner's application of legal standards. See Lewis v. Barnhart, 285 F.3d 1329, 1330 (11th Cir. 2002) (per curiam); Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam). The application of legal principles is closely scrutinized. See Doughty, 245 F.3d at 1278. Indeed, when the Commissioner has used incorrect legal standards or failed to explain her decision

adequately and the reviewing court is unable to determine whether the correct law has been applied, then the court will reverse the decision. See Johnson, 268 F. Supp. 2d at 1321; see also Foote, 67 F.3d at 1558.

### III.     Summary of Argument

Plaintiff raises one issue on appeal. See Plaintiff's Memorandum of Law in Opposition to the Commissioner's Decision Denying Plaintiff Disability Insurance Benefits (Dkt. No. 17; Plaintiff's Memorandum) at 1. She asserts that the ALJ failed to fully develop the record. Id. Specifically, Plaintiff contends that the ALJ should have requested updated medical records and recontacted her treating physician, Robert Kleinhans, M.D. See id. at 1, 13. Accordingly, Plaintiff requests that this case be remanded. Id. at 14.

### IV.     Discussion

Plaintiff generally asserts that the ALJ failed to fully develop the record. See id. at 1. The regulations[5] place the onus on the claimant to provide evidence establishing an alleged impairment. See 20 C.F.R. § 404.1512(c). Indeed, he or she "must furnish medical and other evidence that [the Commissioner] can use to reach conclusions about [the claimant's] medical impairment(s)." Id. § 404.1512(a). Moreover, when the claimant fails to provide "the medical and other evidence that [the Commissioner] need[s] and request[s], [she] will have to make a decision based on information available." Id. § 404.1516.

While a plaintiff has a duty to provide the necessary evidence, "the ALJ [also] has a basic obligation to develop a full and fair record." Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997) (per curiam). Indeed, the "judge may stop the hearing temporarily and

---

[5]     The regulations are found in 20 C.F.R. Part 404.

continue it at a later date if he or she believes that there is material evidence missing at the hearing." 20 C.F.R. § 404.944.  However, an ALJ's failure to develop a full and fair record will not warrant remand unless the claimant can show prejudice.  See Graham, 129 F.3d at 1423; see also Boykin v. Apfel, No. Civ. A. 98-0774-BH-S, 2000 WL 284201, at *1 (S.D. Ala. Feb. 22, 2000) (finding that when the claimant is represented by counsel at the hearing before the ALJ, the claimant's "burden to show prejudice is at least as great").  In particular, the Court will consider "whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'" Graham, 129 F.3d at 1423 (quoting Brown v. Shalala, 44 F.3d 931, 934-35 (11th Cir. 1995)); see also Boykin, 2000 WL 284201, at *1.  Further, an ALJ is not required to develop the medical record for the time period after the claimant has filed his or her application.  See Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam).

### 1. Updated Medical Records

Plaintiff argues that the ALJ failed to fully develop the record because she "recognized that there may be additional medical evidence . . .," yet she never requested Plaintiff's updated medical records. See Plaintiff's Memorandum at 12-13.  Plaintiff alleges that this failure was prejudicial because the "updated medial records would likely show that [Plaintiff] . . . is unable to do her previous work, or any other full time work, which exists in the national economy." Id. at 9.  The Commissioner, on the other hand, asserts that the ALJ did not have a duty to update the medical record, and nevertheless, the medical record was updated and "the ALJ had no reason to believe that additional medical records existed . . . ." Memorandum in Support of the Commissioner's Decision (Dkt. No. 18; Commissioner's

Memorandum) at 5-6.

In support of her assertion that the ALJ knew the medical record was not complete, Plaintiff cites to the discussion between the ALJ and Plaintiff's previous attorney, Mr. J.D. DiLorenzo, Esquire, regarding the completeness of Plaintiff's medical record. See Plaintiff's Memorandum at 10-12. In pertinent part, the following exchange occurred during the hearing:

| | |
|---|---|
| ALJ: | All right, Mr. DiLorenzo, I have had an opportunity to review the record in Ms. Hatter's case. Obviously, the records were received by fax here this morning at 9:34, and basically, shortly thereafter, the other set came through, so these documents have gotten my attention for about five minutes here this morning, but that's about it. Just for your purposes - - I don't know how often you practice up here in the Jacksonville office - - I just don't like to get records at the last minute. |
| ATTY: | I know. I haven't seen them yet myself. |
| . . . . | |
| ALJ: | . . . and the reason we called your office yesterday is because I get very concerned when I'm reviewing a record, and it's very close to the date of the hearing, and all my medical evidence is about two years old. And I have to believe there's a lot of other evidence outstanding in Ms. Hatter's case in light of the fact this has been a workers' comp case for a number of years, I understand. |
| ATTY: | Right. |
| ALJ: | So what are we all missing? |
| . . . . | |
| ATTY: | . . . I didn't start doing my hearing statement until this weekend, so I didn't know that the medical was missing until this weekend. That's why I didn't know until yesterday, I guess. But it's still my fault. |
| ALJ: | So what else is outstanding in this record? |
| ATTY: | As far as I know, Your Honor, that's - - I don't know what you have, but as far as I understand, that's it. |
| . . . . | |
| ALJ: | So if that's - - you know that I've only got what you had an |

-7-

|       |                                                                                                                                                                                                                                                  |
|-------|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|       | opportunity to copy down there until what you sent me this morning.                                                                                                                                                                              |
| ATTY: | Yeah, I know. I didn't sent [sic] that to you this morning though. I just - - I called Ms. Shigo's office - -                                                                                                                                    |

. . . .

| ALJ:  | The - - the issue is I want to know if I've got all the medical. |
| ATTY: | Okay. And I haven't seen what you have, so that's why I don't know. |

. . . .

| ATTY: | My understanding of what we got this morning is what I'm referring to - - that I haven't seen. I mean most of this stuff - - |
| ALJ:  | Well, then you've seen everything. You knew that I didn't have anything after 2002. |
| ATTY: | Right. Until this morning, right. |
| ALJ:  | Yeah. |
| ATTY: | Right. And I haven't seen that new stuff. That's what I'm trying to say. The stuff that you got faxed today, I haven't seen yet. |
| ALJ:  | Okay. Well, this is a very, very, poorly presented situation as far as I'm concerned. Boy. |

. . . .

| ALJ:  | This is an informal procedure. I realize I'm not - - this is an Administrative hearing, but you know, I'm here to do a thorough job for your client no matter what you choose to do. And this really puts me in a very difficult posture to try and present a case. And I'm - - I know if this is a workers' comp case, there's got to be other medical out there. |
| ATTY: | I mean I have the whole file from the work comp lawyer up until July and - - of '03, and that's supposed to be from July '03 up to today, from what we got faxed in today. I mean - - |
| ALJ:  | So I - - you're certifying that I have everything today that is in Ms. Hatter's workers' compensation file? |
| ATTY: | The file that I was given. Now there's two different files and two different lawyers' offices. And, I mean, you know, I understand the problem with the medical and you've got a vocational expert here, and you know, I just didn't want to put the hearing off. But you know. I mean if you'd rather reschedule - - |
| ALJ:  | No. I just want you to tell me that I have all the medical, because that's what I rely on you for, is to ensure that I have all the medical evidence that exists with respect to your client at this point. That's what I'm asking you at this point. |
| ATTY: | Could I get five minutes to answer that question so I could look |

-8-

|       |                                                                 |
|-------|-----------------------------------------------------------------|
|       | at mine?                                                        |
| ALJ:  | No.                                                             |
| ATTY: | No?                                                             |
| ALJ:  | Because you've had time to prepare for this case.  I have had time. |
| ATTY: | Uh-huh.  Well, as far as I understand, you do, yes Your Honor.  As far as I know, you do. |

Id. at 242-48.  The ALJ then proceeded with the hearing as scheduled.  Id. at 248-87.

Based on the content of that exchange and the evidence in the record, the Court finds Plaintiff's assertion, that the ALJ recognized that there was other updated medical evidence, to be without merit.  While it appears from this discussion that, prior to the morning of the hearing, the ALJ only had Plaintiff's medical records through 2002, the ALJ did receive the remaining medical records, through the date of the hearing, by fax on the morning of the hearing.  See id. at 245.  Indeed, twice the attorney stated that the ALJ had all of the medical records and did not ask the ALJ to post-pone the hearing or keep the record open so that the medical evidence could be updated.  See id. at 244, 248.  Moreover,  as the ALJ proceeded to hold the hearing, she appeared satisfied that she had the complete medical record.  Accordingly, the undersigned finds that, contrary to Plaintiff's assertion, the hearing transcript does not demonstrate that the ALJ believed there were more updated medical records that were not in evidence.

Even if the ALJ thought there was other updated medical evidence not included in the record, the undersigned finds that the ALJ did not have to develop Plaintiff's medical evidence further.  The ALJ was under no duty to develop Plaintiff's medical records beyond December 18, 2001, the date she filed for DIB.  See Ellison, 355 F.3d at 1276.  Nevertheless, the record demonstrates that the ALJ had for consideration, and did consider,

several medical records, regarding Plaintiff's medical treatments, through the date of the hearing. See Tr. at 19-22. Indeed, the treatment notes and medical opinions from Plaintiff's treating physician, Robert Kleinhans, M.D., who treated Plaintiff on a consistent basis between February, 2001 and March, 2004,[6] were available and considered. See Tr. at 153-171, 219-223, 227-236, 18-19, 22. Moreover, the ALJ also reviewed and evaluated medical records from Ramon E. Pino, M.D., from September, 2003 through December, 2003. See id. at 224-226, 19-20. Notably, Plaintiff does not indicate what updated medical evidence was not included in the record or what "evidentiary gap" exists that would prejudice Plaintiff. See Plaintiff's Memorandum at 1-15. Upon independent review of the record, the Court has identified no such "evidentiary gaps" causing clear prejudice to Plaintiff. Accordingly, the Court finds that the ALJ did not have a duty to develop Plaintiff's record to include additional updated medical records

### 2. Dr. Kleinhans' Opinion

Plaintiff also argues that the ALJ erred in failing to recontact her treating physician Dr. Kleinhans. See Plaintiff's Memorandum at 14. Plaintiff began treatment with Dr. Kleinhans in February of 2001 when she sought a second opinion regarding her left knee. See Tr. at 162, 164. Dr. Kleinhans recommended a total left knee replacement, which he performed in April of 2001. See id. at 164, 146-47. He continued to follow-up with Plaintiff after her knee replacement. See id. at 165-71. Dr. Kleinhans also treated Plaintiff's right shoulder strain and performed her right shoulder decompression surgery. See id. at 153-55, 158-61, 227-31, 236. On September 5, 2003, Dr. Kleinhans completed a Maximum Medical

---

[6] Thus, Dr. Kleinhans is considered a treating source, see 20 C.F.R. § 404.1527.

Improvement/Permanent Impairment Determination Certification Form and a Descriptive Restrictions Chart (2003 Assessment) on Plaintiff's knee and shoulder injuries. See id. at 232-34. In the 2003 Assessment, Dr. Kleinhans indicated that Plaintiff could stand and walk for one hour and could sit for eight hours. Id. at 234. He also opined that Plaintiff could occasionally lift and carry up to 10 pounds but was not able to bend, squat, crawl, or climb. Id. In addition to the 2003 Assessment, Dr. Kleinhans completed a Treating Physician's Medical Assessment of Ability to do Work-Related Activities (2004 Assessment) regarding Plaintiff's injuries, on February 5, 2004. Id. at 219-23. In the 2004 Assessment, Dr. Kleinhans indicated that Plaintiff could lift and/or carry less than 5-10 pounds, stand and/or walk for less than one hour, and could sit less than one hour in an 8-hour day. Id. at 219-20. Dr. Kleinhans asserted that these restrictions were supported by Plaintiff's "s/p total knee." Id. He also noted that Plaintiff could never climb, stoop, crouch, kneel, or crawl and that her ability to reach and push/pull was affected by her impairments. Id. at 220-21.

The ALJ discussed Dr. Kleinhans opinions and gave them "appropriate weight." Id. at 22. She determined that his 2003 Assessment was entitled to controlling weight. Id. The ALJ further determined that the 2004 Assessment was "clearly influenced by the claimant's recovery period from her November 2003 right shoulder procedure and therefore more restrictive during her rehabilitative period." Id.[7]

Plaintiff now contends that the ALJ should have "follow[ed]-up with [Dr. Kleinhans] regarding his assessment or require[d] that [Dr. Kleinhans] provide additional information regarding his opinion," because Dr. Kleinhans' 2004 Assessment was inconsistent with the

---

[7] The Court notes that Plaintiff did not challenge the ALJ's evaluation of Dr. Kleinhans' opinions.

ALJ's finding that Plaintiff can return to work in the national economy. See Plaintiff's Memorandum at 14. The Commissioner, however, asserts that this argument is unavailing because Dr. Kleinhans' opinion was not inadequate and the rejection of Dr. Kleinhans' 2004 Assessment did not create a duty to recontact him. See Commissioner's Memorandum at 7.

An ALJ should recontact a medical source if the evidence received from that source is inadequate for the ALJ to determine whether the claimant is disabled. See 20 C.F.R. § 404.1512(e). However, as explained by the Tenth Circuit Court of Appeals, "it is not the rejection of the treating physician's opinion that triggers the duty to recontact the physician; rather it is the inadequacy of the 'evidence' the ALJ 'receive[s] from [the claimant's] treating physician' that triggers the duty." White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2001) (quoting 20 C.F.R. § 416.912(e)). In this case, the ALJ did not find Dr. Kleinhans' opinion in the 2004 Assessment inadequate but, instead, found that this opinion was "clearly influenced by the claimant's recovery period from her November 2003 right shoulder procedure . . ." and apparently, in contrast to the 2003 Assessment, not consistent with the record as a whole. See Tr. at 22. In addition, Plaintiff does not argue that the opinions in Dr. Kleinhans' 2003 Assessment were inadequate, nor does she explain how the ALJ's failure to recontact Dr. Kleinhans created a prejudicial "evidentiary gap" in her medical record. See Plaintiff's Memorandum at 1-15.

Further, the Court finds that the ALJ's decision not to give Dr. Kleinhans' 2004 Assessment controlling weight did not create an evidentiary gap because his treatment notes adequately detailed Plaintiff's left knee and right shoulder impairments, such that the

ALJ could determine whether Plaintiff was disabled.  Dr. Kleinhans treated Plaintiff on a regular basis beginning in February 21, 2001, and Dr. Kleinhans' notes from each of those visits were included in the record.  See Tr. at 153-71, 227-29, 231, 236.  On May 10, 2001, two weeks after her left knee surgery, Dr. Kleinhans noted that Plaintiff was "doing great," that the range of motion was 0-120 degrees, and that "[h]er pre-op pain is gone." Id. at 165.  Then, during a follow-up visit eight months later, the doctor stated that although Plaintiff was "[s]till having some pain," her left knee "[x-]ray look[ed] great, good position and fixation." Id. at 157.  Finally, after Plaintiff fell and hurt her right shoulder in March of 2002, Dr. Kleinhans noted that an "[x-]ray of the knee shows the implant to be in good position and solidly fixed . . . ." Id. at 154.  While that same fall did later require right shoulder surgery in November of 2003, six weeks after that surgery, Dr. Kleinhans stated that Plaintiff was "doing ok" and that the "pain is decreasing." Id. at 229.  Then, in March, 2004, Dr. Kleinhans noted that Plaintiff's right shoulder pain was decreased and that her physical therapy was finished. Id. at 227.  He also stated that Plaintiff did not need to return for a follow-up visit for three months. Id.  Thus, although the ALJ determined that Dr. Klienhans' 2004 Assessment was not entitled to controlling weight, based on Dr. Klienhans' treatment notes, there was still sufficient evidence in the record from which the ALJ could have based his disability determination. Further, at the conclusion of the hearing, the ALJ specifically asked Plaintiff's attorney whether the medical record was complete and Plaintiff's attorney responded yes. Id. at 285.  Accordingly, the undersigned finds that there is no gap in the record evidence or Dr. Kleinhans' opinions creating prejudice to Plaintiff, and therefore, the Court will not disturb the ALJ's determination not to recontact Dr. Kleinhans.

## V. Conclusion

In accordance with the foregoing, it is hereby **ORDERED**:

1. To the extent Plaintiff requests oral argument on the issues presented in her Memorandum, it is **DENIED**.

2. The Clerk of the Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **AFFIRMING** the Commissioner's decision and to close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 8th day of February, 2007.

*Marcia Morales Howard*
**MARCIA MORALES HOWARD**
United States Magistrate Judge

lc2

Copies to:
Counsel of Record